UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

"IN ADMIRALTY"

JAMES H. RIDINGER,  )  Case No. **04-60228**
 )  **CIV - DIMITROULEAS**
                Plaintiff,  )  / TORRES
       vs.  )
 )  VERIFIED COMPLAINT *IN REM* AND
THE MOTOR VESSEL LADY  )  *IN PERSONAM*
KATHERINE, HER ENGINES, TACKLE,  )
FURNITURE, MACHINERY,  )
EQUIPMENT AND APPURTENANCES,  )
ETC., *in rem*; and GLOBAL CRUISING,  )
LTD., *in personam*,  )
 )
                Defendants.  )
 )



Plaintiff JAMES H. RIDINGER (hereinafter "RIDINGER") alleges:

## GENERAL ALLEGATIONS

1. This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1333 and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2. Venue is proper in this district because the *in rem* defendant, the M/V LADY KATHERINE, is now within this judicial district.

3. At all times set forth hereinafter, plaintiff RIDINGER, was and still is a an individual domiciled in the State of North Carolina.

4. Upon information and belief, at all times hereinafter set forth, the *in personam* defendant, GLOBAL CRUISING, LTD., is an alien corporation organized and existing under and

by virtue of the laws of one or more foreign nations and is the owner of the M/V LADY KATHERINE.

  5. Upon information and belief the *in rem* defendant M/V LADY KATHERINE is a St. Vincent and the Grenadines-flagged motor vessel of **310 gross tons and 40 meters in length built in 1976 by Cheoy Lee**. The M/V LADY KATHERINE is now within the jurisdiction of this court.

  6. On or about June 27, 2001, RIDINGER entered into a Charter Party contract between the M/V LADY KATHERINE and her owners and/or owner's agents GLOBAL CRUISING, LTD. for USD $87,000.00, due and paid upon signing, a copy of which, along with Charter Party documents, is attached hereto as Exhibit "A". Said Charter Party was for hire of the M/V LADY KATHERINE, her equipment, facilities, appurtenances and crew, for a Mediterranean vacation cruise commencing July 30, 2001 in St. Tropez and concluding on August 9, 2001 in Naples, Italy. The M/V LADY KATHERINE was deemed unfit and unseaworthy upon delivery, in breach of the Charter Party.

  7. RIDINGER has made numerous demands to the M/V LADY KATHERINE and her owners and/or owner's agents GLOBAL CRUISING, LTD. and SEVEN SEAS YACHT CHARTERS for return of the contract price. Despite such demands, the amount remains unpaid.

FIRST CAUSE OF ACTION

(ARREST PURSUANT SUPPLEMENTAL ADMIRALTY RULE C)

  8. RIDINGER incorporates by reference paragraphs 1 through 7 above as though fully set forth herein.

  9. By virtue of the M/V LADY KATHERINE and her owner GLOBAL CRUISING, LTD. breach of the Charter Party for hire of the M/V LADY KATHERINE, RIDINGER has maritime lien under general maritime law, pursuant to 46 U.S.C. § 31341 *et. seq.*, enforceable *in rem*

pursuant to Supplemental Admiralty Rule C of the Federal Rules of Civil Procedure.

10. As a result of the foregoing, RIDINGER has incurred losses of $87,000.00, as well as incidental and consequential damages incurred securing lodging and a substitute vessel.

11. The M/V LADY KATHERINE is liable *in rem* herein for all losses and damages sustained as alleged, together with interest and prejudgment interest plus all costs.

## SECOND CAUSE OF ACTION

(MARITIME ATTACHMENT - SUPPLEMENTAL ADMIRALTY RULE B)

12. RIDINGER incorporates by reference paragraphs 1 through 11 above as though fully set forth herein.

13. RIDINGER has an *in personam* admiralty claim against defendant GLOBAL CRUISING, LTD., arising from breach of the Charter Party for the M/V LADY KATHERINE.

14. Upon information and belief plaintiff RIDINGER alleges that defendant GLOBAL CRUISING, LTD. cannot be found within the jurisdiction of this court, but assets of the defendant are, or will be, located within this District and within the jurisdiction of this Court, to wit: the M/V LADY KATHERINE, owned by defendant and in the charge of a master on board.

15. This property may be attached pursuant to Supplemental Rule B of the Federal Rules of Civil Procedure and sold to satisfy the claim herein.

**WHEREFORE**, plaintiff JAMES H. RIDINGER. prays that, as for the First Cause of Action contained herein:

1. As permitted by and pursuant to the provisions of Supplemental Admiralty Rule C of the Federal Rules of Civil Procedure, the vessel M/V LADY KATHERINE be arrested citing it to appear and answer this Verified Complaint and that after due proceeding be had, a judgment *in rem* enter in the amount of $87,000.00, together with pre-judgment and post-judgment interest thereon,

as well as plaintiff's costs incurred in the suit and disbursements made as *custodia legis*, and that the said vessel be condemned and sold to pay the demands as aforesaid, with interest, costs and disbursements;

2. A warrant of arrest issue against the M/V LADY KATHERINE pursuant to Supplemental Admiralty Rule C of the Federal Rules of Civil Procedure citing it to appear and answer the Verified Complaint and that after due proceedings be had the vessel be condemned and sold to pay the demands as aforesaid, with interest, costs, and disbursements;

3. Judgment be entered in favor of plaintiff JAMES H. RIDINGER against the M/V LADY KATHERINE, *in rem* in the amount $87,000.00, plus pre-judgment and any post-judgment interest, costs associated with these proceedings, and *custodia legis*;

Plaintiff JAMES H. RIDINGER prays that, as for the Second Cause of Action contained herein:

1. That process according to the practice of this Court issue against defendant;

2. That if defendant cannot be found within this District, as stated in the affidavit attached hereto, that all its property within this District be attached as set forth in this Complaint, with interest and costs;

3. That the court enter judgment against defendant for the amount of plaintiff's damages, together with interest and costs;

4. That pursuant to Supplemental Admiralty Rule B of the Federal Rules of Civil Procedure, process of maritime attachment and garnishment issue against the M/V LADY KATHERINE; and;

5. The court withhold such attachment and garnishment at this time.

6. Plaintiff JAMES H. RIDINGER be awarded such other relief as it may be entitled to

receive.

DATED: February 20, 2004                    KAYE, ROSE & MALTZMAN, LLP

                                            By: _____
                                            Daniel W. Courtney
                                            FL. Bar No.:  0499781
                                            Darren W. Friedman
                                            FL. Bar No.:  0146765
                                            Attorneys for Plaintiff
                                            JAMES H. RIDINGER

## VERIFICATION

I, **Daniel W. Courtney, am** an attorney with the firm of Kaye, Rose & Maltzman, LLP, attorneys for plaintiff JAMES H. RIDINGER. I have read the foregoing complaint and know the contents thereof and the same is true to my knowledge, except as to the matters therein stated on information and belief, and as to those matters I believe it to be true.

In accordance with Local Admiralty Rule (A)(5), I declare under penalty of perjury I am authorized to make this representation on behalf of our client. I have discussed this case at length with co-counsel and have read the charter agreement. Plaintiff is currently outside the jurisdiction and has given permission for his attorneys to sign this verification in lieu of his own signature on the attached complaint.

In accordance with 28 U.S.C. § 746(2), I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 19th day of February 2004, at Miami, Florida.

_____
Daniel W. Courtney

# EXHIBIT "A"

# M.Y.B.A. YACHT CHARTER AGREEMENT — PAGE ONE OF FIVE

**NAME OF YACHT:** M/Y LADY KATHRYN     **Type:** Motor Yacht
**Port of Registry:** Kingstown, St. Vincent     **Flag:** St. Vincent     **Length:** 131'

**This Date:** June 27, 2001     **and Place:** Nokomis, Florida, USA

Between the Undersigned Parties it has been Agreed as Follows:

**OWNER:** Global Cruising, Ltd.
**ADDRESS:** Tortola, BVI
**CHARTERER:** James H. Ridinger
**ADDRESS:** Greensboro, North Carolina, USA
**Broker:** Seven Seas Yacht Charters
**Broker (Stakeholder):** N/A

## CHARTER PARTICULARS

**CHARTER PERIOD:** From 12 Noon Hrs on the July 30, 2001
                 To   12 Noon Hrs on the August 09, 2001
**PORT OF DELIVERY:** St. Tropez ~~Nice~~, France     **PORT OF RE-DELIVERY:** Naples, Italy
**Cruising Area:** Mediterranean
**Maximum Number of Guests Sleeping (** 10 **) and Cruising (** 10 **) on Board**
**Crew Consisting of:** Captain + 6

| | |
|---|---|
| **CHARTER FEE:** | $60,000.00 |
| **VAT (tax)** | 12,000.00 |
| **Plus Advance Provisioning Allowance (A.P.A.) (see Clause 8):** | 15,000.00 |
| **Delivery Fees:** | –0– |
| **Security Deposit (see Clauses 16 & 17):** | –0– |

**To be paid as follows:**
**FIRST INSTALMENT:** Due on contract signing     $87,000.00
**SECOND INSTALMENT:**     N/A

To the following Broker's Clients' Account and shall be deemed paid only when cleared:

**Seven Seas Yacht Charters**

## CONDITIONS

The CHARTERER shall pay in addition to the Charter Fee and at cost: all fuel and lubricating oil costs for the yacht and its tenders; all harbour, pilot and diver's fees; water, electricity and national and/or local taxes as applicable; food and beverages for the CHARTERER's party; personal laundry and all communications costs for the CHARTERER's party.

This contract supercedes contract dated June 25, 2001.
Subject to yacht availability to travel at night also during transit from S. of France to Naples.
Uncollected VAT refunded to charterer within 60 days of charter end.
SMOKING: On deck only in designated areas.
A crew gratuity is customary, but is at charterer's descration.

## SIGNATURES

The OWNER and CHARTERER accept that Clauses 1-24, inclusive, form part of this Agreement. The Agreement consists of five pages plus any Special Conditions or Addenda specifically listed above.

*as agent for Global Cruising, Ltd.*
**OWNER** [signature: Josef R. Staal] **DATE** 7/24/01     **CHARTERER** [signature: James H. Ridinger] **DATE** 2/02/01

**WITNESS** [signature]     **WITNESS** [signature: Stacy R.]
**PRINT NAME & ADDRESS OF WITNESS:** TORSTEN RUDOLPH, ALEMANUENSTR, 71727 GROSSBOTTWAR
**PRINT NAME & ADDRESS OF WITNESS:** STACY ROBINS, 230 5th STREET, MB, FL 33139

**BROKER** _____     **BROKER** _____
**WITNESS** _____     **WITNESS** _____

# M.Y.B.A. YACHT CHARTER AGREEMENT - PAGE TWO OF FIVE

**CLAUSE 1  AGREEMENT TO LET AND HIRE**

The OWNER agrees to let the Yacht to the CHARTERER and not to enter into any other Agreement for the Charter of the Yacht for the same period.

The CHARTERER agrees to hire the Yacht and shall pay the Charter Fee, the Security Deposit, the Advance Provisioning Allowance and any other agreed charges, in cleared funds, on or before the dates and to the Account specified in this Agreement.

**CLAUSE 2  DELIVERY**

The OWNER shall at the beginning of the Charter deliver the Yacht to the Port of Delivery and the CHARTERER shall take delivery in full commission and working order, seaworthy, clean, in good condition throughout and ready for service, with full equipment, including up to date safety and life-saving equipment (including life jackets for children if any are carried in the Charterer's Party), as required by the Yacht's registration authority and fitted out as appropriate for a Yacht of her size and type and enabling the CHARTERER to use the Yacht as set out in Clause 13. The OWNER does not warrant her comfort in bad weather conditions for all cruises or passages within the Charter Area.

**CLAUSE 3  RE-DELIVERY**

The CHARTERER shall re-deliver the Yacht to the OWNER at the Port of Re-Delivery free of any debts incurred for the CHARTERER's account during the Charter Period and in as good a condition as when delivery was taken, except for fair wear and tear arising from ordinary use. The CHARTERER may, if he wishes, re-deliver the Yacht to the Port of Re-Delivery and disembark prior to the end of the Charter Period but such early re-delivery shall not entitle the CHARTERER to any refund of the Charter Fee.

**CLAUSE 4  CRUISING AREA**

The CHARTERER shall restrict the cruising of the Yacht to within the Cruising Area and to within regions in the Cruising Area in which the yacht is legally permitted to cruise. The CHARTERER shall also restrict time under way to an average of six (6) hours per day, unless the Captain, in his sole discretion, agrees to exceed this rate.

**CLAUSE 5  MAXIMUM NUMBER OF PERSONS
RESPONSIBILITY FOR CHILDREN
HEALTH OF THE CHARTERER'S PARTY**

a) The CHARTERER shall not at any time during the Charter Period permit more than the Maximum Number of Guests Sleeping or Cruising on Board plus, at the sole discretion of the Captain, a reasonable number of visitors whilst the Yacht is securely moored in port.

b) If children are taken on board, the CHARTERER shall be fully responsible for their conduct and entertainment and no member of the crew shall be held responsible for their conduct or entertainment.

c) The nature of a yacht charter may render it unsuitable for anybody with physical disability or undergoing medical treatment. By signature of this Agreement the CHARTERER warrants the medical fitness of all members of the CHARTERER's party for the voyage contemplated by this Agreement. The CHARTERER and his party undertake to have all necessary visas and vaccinations for the countries to be visited.

**CLAUSE 6  CREW**

The OWNER shall provide a suitably qualified Captain acceptable to the insurers of the Yacht and a suitably experienced Crew, properly uniformed, fed and insured. The OWNER shall ensure that no member of the Crew shall carry or use any illegal drugs on board the Yacht or keep any firearms on board (other than those declared on the manifest) and shall ensure that the Captain and Crew comply with the laws and regulations of any country into whose waters the Yacht shall enter during the course of this Agreement.

**CLAUSE 7  CAPTAIN'S AUTHORITY**

The OWNER shall ensure that the Captain shows the CHARTERER the same attention as if the CHARTERER were the OWNER. The Captain shall comply with all reasonable orders given to him by the CHARTERER regarding the management, operation and movement of the Yacht, wind, weather and other circumstances permitting. The Captain shall not, however, be bound to comply with any order which, in the reasonable opinion of the Captain, might result in the Yacht moving to any port or place that is not safe and proper for her to be in, or might result in the CHARTERER failing to re-deliver the Yacht upon the expiration of the Charter Period, or would, in the reasonable opinion of the Captain, cause a breach of Clause 13 and/or any other clause of this Agreement. Further, without prejudice to any other remedy of the OWNER, if, in the reasonable opinion of the Captain, the CHARTERER or any of his Guests fail to observe any of the provisions in Clause 13 and if such failure continues after the Captain has given due and specific warning to the CHARTERER in writing in respect of the same, the Captain shall inform the OWNER and the Broker(s) and the OWNER may terminate the Charter forthwith or instruct the Captain to return the Yacht to the Port of Re-Delivery and upon such return the Charter Period shall be terminated. The CHARTERER and his guests shall disembark, the CHARTERER having settled all outstanding expenses with the Captain beforehand and the CHARTERER shall not be entitled to any refund of the Charter Fee.

With particular regard to the use of watersports equipment, as defined in Clause 16, the Captain shall have the authority to exclude the CHARTERER or any or all of his Guests from use of any particular watersports equipment if, in his reasonable opinion, they are not competent, are unsafe, are behaving in an irresponsible manner, or are failing to show due concern for other persons when operating this equipment.

**CLAUSE 8  OPERATING COSTS**

The CHARTERER shall be responsible for the operating costs, as specifically defined under "CONDITIONS" on Page One of this Agreement, for the entire Charter Period for himself and his Guests. Having paid the Advance Provisioning Allowance (A.P.A.) via the Broker's Account, as required by this Agreement, the CHARTERER shall be advised by the Captain, at intervals, as to the disbursement of the A.P.A. and shall, if the balance remaining becomes insufficient, in the light of current expenditure, pay to the Captain, in cash, a sufficient sum to maintain an adequate credit balance.

Prior to disembarkation at the end of the Charter Period, the Captain shall present to the CHARTERER a detailed account of expenditure with as many supporting receipts as possible, and the CHARTERER shall pay to the Captain, in cash, the balance of the expenses, or the Captain shall repay to the CHARTERER, in cash, any balance overpaid, as the case may be.

Payment for special requirements or equipment, shore transport or excursions or any other expenses not customarily considered part of the Yacht's operating costs may be required to be paid via the Broker's account in advance or to the Captain on boarding in addition to the A.P.A.

Unless specific alternative arrangements have been made in writing, in advance, all payments for operating costs etc. shall be payable in cash in the same currency as the Charter Fee. Payment by cheque, credit card or other negotiable instrument is not normally acceptable due to the itinerant nature of the Yacht's seasonal schedule and the CHARTERER should therefore ensure that he is carrying sufficient cash to cover all reasonably foreseeable expenses or arrange to deposit additional funds with the Broker.

**CLAUSE 9  DELAY IN DELIVERY**

a) If, by reason of force majeure (as defined in Clause 18 (d)), the OWNER fails to deliver the yacht to the CHARTERER at the Port of Delivery at the commencement of the Charter Period and delivery is made within forty eight (48) hours of the scheduled commencement date, or within one tenth (1/10th) of the Charter period, whichever period is the shorter, the OWNER shall pay to the CHARTERER a refund of the Charter Fee at a pro rata daily rate or if it be mutually agreed the OWNER shall allow a pro rata extension of the Charter period

PLEASE INITIAL - OWNER: [signature] ERS   CHARTERER: [signature]

# M.Y.B.A. YACHT CHARTER AGREEMENT – *PAGE THREE OF FIVE*

**FAILURE TO DELIVER**

b) If by reason of *force majeure* the OWNER fails to deliver the yacht within forty-eight (48) hours or a period equivalent to one-tenth (1/10th) of the Charter Period, whichever period is the shorter, from the due time of delivery, the CHARTERER shall be entitled to treat this Agreement as terminated. The CHARTERER's exclusive remedy will be to receive repayment without interest of the full amount of payments made by him to the OWNER or Stakeholder. Alternatively, if the parties mutually agree, the Charter Period shall be extended by a time equivalent to the delay.

c) If the OWNER fails to deliver the yacht at the Port of Delivery at the commencement of the Charter Period other than by reason of *force majeure*, the CHARTERER shall be entitled to treat this Agreement as repudiated by the OWNER. The CHARTERER will be entitled to repayment without interest of the full amount of all payments made by him to the OWNER or Stakeholder, and shall in addition be paid by the OWNER liquidated damages as set out in Clause 9 (e)(iv) below.

**CANCELLATION BY OWNER**

d) If prior to the commencement of the Charter Period, as set out on Page 1 of this Agreement, the OWNER tenders notice of cancellation via the Broker and if the cancellation is by reason of *force majeure*, the remedy in (b) above will apply. If the cancellation is for any other reason, then the remedy in (c) above will apply.

e) Should the CHARTERER become entitled to liquidated damages for cancellation or failure to deliver the vessel other than by reason of *force majeure* liquidated damages will be calculated and paid forthwith on the following scale:

   i) Three months or more before commencement of the Charter Period, an amount equivalent to fifteen percent (15%) of the Charter Fee.
   ii) More than one month but less than three months before commencement of the Charter Period, an amount equivalent to twenty-five percent (25%) of the Charter Fee.
   iii) More than fourteen (14) days, but less than one month before commencement of the Charter Period, an amount equivalent to thirty-five percent (35%) of the Charter Fee.
   iv) Less than fourteen (14) days before commencement of the Charter Period, an amount equivalent to 50% of the Charter Fee.

f) The Brokers' commission is deemed earned on the signing of this Contract and the OWNER shall pay the whole of the commission forthwith if the Charter is delayed, the vessel is not delivered or the Charter is cancelled in accordance with provisions Clause 9 (a) to (d) above.

**CLAUSE 10 DELAY IN RE-DELIVERY**

a) If re-delivery of the Yacht is delayed by reason of *force majeure*, re-delivery shall be effected as soon as possible thereafter and in the meantime the conditions of this Agreement shall remain in force but without penalty or additional charge against the CHARTERER.

b) If the CHARTERER fails to redeliver the Yacht to the OWNER at the Port of Re-Delivery due to intentional delay or change of itinerary against the Captain's advice, then the CHARTERER shall pay forthwith to the OWNER by direct telegraphic transfer via the Broker/Stakeholder's Account demurrage at the daily rate plus forty percent (40%) of the daily rate, and if delay in re-delivery exceeds twenty-four (24) hours, the CHARTERER shall be liable to indemnify the OWNER for any loss or damage which the OWNER shall suffer by reason of deprivation of use of the Yacht or cancellation of, or delay in delivery under, any subsequent charter of the Yacht.

**CLAUSE 11 CANCELLATION BY CHARTERER**

a) Should the CHARTERER give notice of cancellation of this Agreement on or at any time before commencement of the Charter Period the CHARTERER shall remain liable for all payments due prior to and unpaid at the date of cancellation.
Should notice of cancellation be given by the CHARTERER or should the CHARTERER fail after having been given notice to pay any amount payable under this Agreement, the OWNER shall be entitled to treat this Agreement as having been repudiated by the CHARTERER and to retain the full amount of all payments made by the CHARTERER.

**RE-LET**

b) Without prejudice to the OWNER's remedies in (a) above, if the OWNER is able to re-let the yacht to another CHARTERER for all or part of the Charter period then the OWNER or the Broker/Stakeholder on his behalf shall refund to the CHARTERER such net balance as is due to the CHARTERER after re-letting which is to be calculated upon the following basis:
The original Charter Fee, net of commissions, shall be deducted from the net hire for the Charter Period due to the OWNER from the re-letting. To this figure is to be added all reasonable additional expenses, including commissions, incurred by the OWNER on re-letting. The figure as calculated will be deducted from the monies actually received from the CHARTERER and any remaining credit balance due to the CHARTERER will be repaid. The intention is that the OWNER shall not receive less in net proceeds from any re-letting than would have been received if the original Agreement had been fulfilled. The OWNER shall use his best endeavours to re-let the yacht and shall not unreasonably withhold his agreement to re-let, although charters which may reasonably be considered detrimental to the yacht, its reputation, its crew or its schedule may be refused.

**FINANCIAL FAILURE OF THE OWNER**

c) If, after signature of this Agreement, the OWNER suffers financial failure, the CHARTERER reserves the right to cancel the Charter whereupon the OWNER shall immediately release the CHARTERER from his obligations under this Agreement and all monies shall be refunded without deduction. The OWNER shall remain liable to pay to the Broker the commission which would have been earned had it not been for the OWNER'S financial failure.
In this context 'financial failure' shall include but not be limited to bankruptcy, liquidation, receivership, voluntary arrangements with creditors or similar arrangements or interventions (be they judicial or non-judicial) made as a result of the OWNER's becoming insolvent.

**CLAUSE 12 BREAKDOWN OR DISABLEMENT**

a) If, after delivery, the Yacht at any time is disabled by breakdown of machinery, grounding, collision or other cause so as to prevent reasonable use of the Yacht by the CHARTERER for a period of not less than twelve (12) consecutive hours or one-tenth (1/10th) of the Charter Period, whichever is the shorter, and not more than forty-eight (48) consecutive hours or one-tenth (1/10th) of the Charter Period, whichever is the shorter, (and the disablement has not been brought about by any act or default of the CHARTERER), the OWNER shall make a pro rata return of the Charter Fee from the date and time when the Yacht was disabled or became unfit for use. The CHARTERER shall remain liable for normal expenses during this period. If it be mutually so agreed, the OWNER shall allow a pro rata extension of the Charter Period. If the CHARTERER considers the circumstances justify the invoking of this Clause, he shall give immediate notice in writing to the Captain that he wishes to do so.

b) If, however, the Yacht is lost, or is so extensively disabled as aforesaid that the Yacht cannot be repaired within a period of forty-eight (48) hours or one-tenth (1/10th) of the Charter Period, whichever is the shorter, the CHARTERER may terminate this Agreement by notice in writing to the OWNER or the Broker(s) or, if no means of communication is possible, to the Captain on the OWNER's behalf, and as soon as practicable after such termination the Charter Fee shall be repaid by the OWNER pro rata without interest for that part of the Charter Period remaining after the date and time that the loss or disablement occurred. In these circumstances the CHARTERER may effect Re-Delivery by giving up possession of the yacht where she lies. The CHARTERER shall be entitled to recover from the OWNER the reasonable cost of returning himself and his passengers to the Port of Re-Delivery by scheduled services, together with any accommodation expenses reasonably necessary for this purpose.

PLEASE INITIAL:- OWNER *SRS*       CHARTERER *GR*

# M.Y.B.A. YACHT CHARTER AGREEMENT — PAGE FOUR OF FIVE

### CLAUSE 13  USE OF THE YACHT

The CHARTERER shall use the Yacht exclusively as a pleasure vessel for the use of himself and his Guests. The CHARTERER shall ensure that no pets or other animals are brought on board the Yacht without the consent in writing of the OWNER. The CHARTERER shall ensure that the behaviour of himself and his Guests shall not cause a nuisance to any person or bring the Yacht into disrepute.

The CHARTERER shall comply, and shall ensure that his Guests comply, with the laws and regulations of any country into whose waters the Yacht shall enter during the course of this Agreement.

The CHARTERER shall ensure that any bonded stores or other merchandise which may already be aboard the Yacht, or may be brought aboard the Yacht during the Charter, are cleared through Customs before being taken ashore.

The Captain shall promptly draw the CHARTERER's attention to any infringement of these terms by himself or his Guests, and if such behaviour continues after this warning, the Captain shall inform the OWNER or his Broker, and the OWNER may, by notice in writing given to the CHARTERER, terminate this Agreement in accordance with Clause 7 of this Agreement.

If the CHARTERER or any of his Guests shall commit any offence contrary to the laws and regulations of any country which results in any member of the crew of the Yacht being detained, fined or imprisoned, or the Yacht being detained, arrested, seized or fined, the CHARTERER shall indemnify the OWNER against all loss, damage and expense incurred by the OWNER as a result, and the OWNER may, by notice to the CHARTERER, terminate this Agreement forthwith.

It is also specifically understood that the possession or use of any illegal drugs or any weapons (including particularly firearms) shall be sufficient reason for the OWNER to terminate the Charter forthwith without refund or recourse against the OWNER.

### CLAUSE 14  NON-ASSIGNMENT

The CHARTERER shall not assign this Agreement, sub-let the Yacht or part with control of the Yacht without the consent in writing of the OWNER, which consent may be on such terms as the OWNER thinks fit.

### CLAUSE 15  SALE OF THE YACHT

a) The OWNER agrees not to sell the Yacht during the Charter Period as set out on Page One of this Agreement.

b) Should the OWNER agree to sell the yacht after the signing of this Charter Agreement, but before delivery to the CHARTERER, the OWNER shall immediately give notice of such sale in writing to the CHARTERER via the Broker. This information shall be kept in strict confidence by all parties to the Agreement.

Should the vessel be sold one of the following provisions will apply:

i) The OWNER shall arrange for the Buyer to take over the Charter Agreement and perform the Charter on the same terms and conditions, either by assignment of the original Charter or by way of a new Charter Agreement between the CHARTERER and the Buyer and written cancellation without penalty of the original Agreement.

Where the Charter is taken over by the Buyer on the same terms and conditions there shall be no penalty against the OWNER and no additional commission due to the Broker.

ii) If the Buyer is unwilling or unable to fulfil the Charter Agreement, the OWNER hereby appoints the Broker to procure the Charter of a replacement yacht of similar or superior standard and condition for the Charter period. If a suitable replacement vessel is found a new Charter Agreement shall be prepared and this original Agreement cancelled. The OWNER shall pay the Broker's commission on the original Charter and the Broker may retain any commission due on the replacement yacht.

iii) Should the OWNER be unable to obtain a similar or superior yacht for the use of the CHARTERER on the same terms as this original Agreement or should the CHARTERER reject the proposed replacement (the CHARTERER shall not unreasonably reject a substitute yacht of same or superior standard) then this Charter Agreement shall be considered as having been cancelled by the OWNER in accordance with Clause 9. All payments made by the Charterer shall be promptly repaid in full to him without deduction, and in addition liquidated damages, calculated in accordance with Clause 9 (c), i, ii, iii or iv as appropriate shall be paid. The Broker shall be paid by the OWNER the full commission due on this original Agreement.

### CLAUSE 16  INSURANCE & CHARTERER'S LIABILITY

a) The OWNER shall insure the Yacht with first-class insurers against all customary risks for a Yacht of her size and type on Institute Yacht Clauses 1.11.85 or other recognised terms extended to provide permission to Charter and to cover Third Party liability, Water Skiers liabilities, together with liabilities arising from the use by the CHARTERER and other competent person(s) authorised by him of jet-skis, surfers, waveriders and other similar powered craft as well as windsurfers, dinghies, catamarans or other water sports equipment carried by the Yacht. The insurance shall also cover War and Strikes and include insurance of Crew against injuries and/or Third Party liabilities incurred during the course of their employment. The CHARTERER shall be entitled to the benefit of the OWNER's insurance.

b) All such insurances shall be on such terms and subject to such deductibles as are customary for a vessel of the Yacht's size and type. Copies of all relevant Insurance documentation shall be available for inspection by the CHARTERER prior to the Charter on reasonable notice to the OWNER, and shall be carried on board the Yacht.

c) Under normal circumstances the CHARTERER shall only be liable for such costs or losses as may be incurred repairing damage caused by the CHARTERER or his guests (intentionally or otherwise) to the Yacht or any third party up to the level of the Excess (Deductible) on the OWNER's insurance policy for each separate accident or occurrence.

d) The CHARTERER may be liable for a sum greater than the Excess (Deductible) on any one accident or occurrence if the CHARTERER or any of his guests acted in such a manner (intentionally or otherwise) as to void, or limit, the cover under the OWNER's insurance.

e) CHARTERER's Liability Insurance is not included in this Agreement but is available.

f) The CHARTERER shall carry independent insurance for Personal Effects whilst on board or ashore and for any Medical or Accident expenses incurred other than as covered under the Yacht's insurance.

g) Cancellation and Curtailment insurance is not included in this Agreement but is available.

### CLAUSE 17  SECURITY DEPOSIT

Unless otherwise provided on Page One of this Agreement, the Security Deposit shall be held by the Stakeholder in his Stakeholder's Account on the OWNER's behalf and may be used in, or towards, discharging any liability that the CHARTERER may incur under any of the provisions of this Agreement, but to the extent that it is not so used, the Security Deposit shall, within twenty-four (24) hours of the end of the Charter Period, or the settlement of all outstanding questions, whichever is the later, be refunded to the CHARTERER without interest.

### CLAUSE 18  DEFINITIONS

a) FORCE MAJEURE

In this Agreement, 'force majeure' means any cause directly attributable to acts, events, non-happenings, omissions, accidents or Acts of God beyond the reasonable control of the OWNER or the CHARTERER (including, but not limited to, strikes, lock-outs or other labour disputes, civil commotion, riots, blockade, invasion, war, fire, explosion, sabotage, storm, collision, grounding, fog, governmental act or regulation, major mechanical or electrical breakdown beyond the crew's control and not caused by OWNER's negligence). Crew changes do not constitute force majeure. Force majeure does not excuse the OWNER from payment of commitments.

PLEASE INITIAL — OWNER: _SPS_   CHARTERER: _JR_

# M.Y.B.A. YACHT CHARTER AGREEMENT — *PAGE FIVE OF FIVE*

b) **OWNERS, CHARTERERS AND BROKERS**

Throughout this Agreement, the terms "OWNER", "CHARTERER" and "Broker" and corresponding pronouns shall be construed to apply whether the OWNER, CHARTERER or Broker is male, female, or corporate, singular or plural, as the case may be.

### CLAUSE 19 SALVAGE

During the period of the charter, the benefits, if any, from all derelicts, salvages and towages, after paying the crew's proportion, hire for the relevant period and expenses, shall be shared equally between the OWNER and the CHARTERER.

### CLAUSE 20 ARBITRATION & LAW

Unless otherwise specified in the appropriate space on Page One of this Agreement, any dispute in connection with the interpretation and fulfilment of this Agreement shall be decided by arbitration in London and in accordance with the Laws of England. The dispute shall be referred to a single Arbitrator to be appointed by the parties hereto. If the parties cannot agree upon the appointment of a single Arbitrator, the dispute shall be settled by three Arbitrators, each party appointing one Arbitrator, the third being appointed by the current President of the Mediterranean Yacht Brokers Association or the American Yacht Charter Association.

Appointment of Arbitrators, or substitution of Arbitrators who are not available, shall be made within two (2) weeks of written notice by the other party, failing which the President of the Association appointing the third Arbitrator shall also appoint an Arbitrator on behalf of the party who fails to appoint one.

The award rendered by the Arbitration shall be final and binding upon both parties and may if necessary be enforced by the Court or any other competent authority in the same manner as a judgement in High Court.

If notice of arbitration proceedings is given by either party, the Stakeholders, after receiving notification of such proceedings, shall not deal with those monies held by them without the agreement of both parties or in accordance with the order of the Arbitrators or their final award. The monies should be held in a designated client account. This account should be interest bearing where normal banking rules permit. The Stakeholders may, with the agreement of both parties, pay the monies into an escrow account jointly controlled by the accredited legal representatives of both parties pending the result of the arbitration.

### CLAUSE 21 BROKERS

The Brokers shall sign this Agreement for the purposes of this Clause only. By their signatures to this Agreement the OWNER and the CHARTERER both confirm and agree to the following:

a) The Brokers' commission shall be deemed to be earned by the Broker(s) upon the signing of this Agreement and be payable by the OWNER on the full Charter Fee plus the Delivery Fee, if applicable, but excluding running expenses, according to Clause 22 below, whether or not he defaults for any reason including force majeure. In the event of Cancellation or Curtailment by the CHARTERER, the commission shall be deducted as an expense from the deposit.

b) If the CHARTERER should extend this Charter, the Brokers shall be entitled to and shall be paid by the OWNER, commission on the gross Charter Fee for the extension, on the same basis as provided herein.

c) If the CHARTERER should re-charter the Yacht from the OWNER, his Agent or his representative, within two (2) years from the date of completion of this Charter, whether or not on the same terms, then the Brokers shall be entitled to, and shall be paid by the OWNER, commission on the gross Charter Fee paid for that further charter upon the same basis as provided herein.

However, if the CHARTERER should choose to re-charter the yacht within this two-year period via another bona fide Broker, to whom the customary or normal commission as defined by M.Y.B.A. is being paid, then the OWNER shall only be obliged to pay a reduced commission of one-third (1/3rd) the full rate to the original Broker. This only applies following the free choice of the CHARTERER and is not relevant if the change of Broker is suggested or solicited by the OWNER.

d) If any agreement should be reached directly between the CHARTERER and the OWNER for the purchase of the yacht within two (2) years from the date of completion of this charter then the Broker(s) shall be entitled to and be paid by the OWNER the customary or normal brokerage commission as defined by M.Y.B.A. However, should the CHARTERER purchase the yacht from the OWNER via a recognised Sales Broker to whom the customary or normal commission as defined by M.Y.B.A. is being paid then the OWNER shall pay, or shall ensure that the new Broker shall pay, a sum equivalent to not less than fifteen (15%) percent of the gross sales commission. It is the responsibility of the OWNER to advise any future Sales Broker of this liability. Any dispute under this Clause may be separately arbitrated.

e) The Brokers in this Agreement shall have no responsibility for any loss, damage or injury to the person or property of the OWNER or CHARTERER or any of their Guests, servants or agents, and further the Brokers shall be under no liability for any errors of judgement or description or otherwise of whatsoever nature and howsoever arising and shall be under no further obligation, duty or responsibility to the OWNER or the CHARTERER save as set out herein. The OWNER and the CHARTERER shall jointly and severally indemnify and hold harmless the Brokers for any loss or damages sustained by them as a result of any liability by the Brokers to any Third Party (person, firm, company or authority) arising from promoting or introducing this Charter, assisting in the performance of this Agreement or performing their duties as Stakeholders.

f) For the purposes of this clause, the terms OWNER and CHARTERER shall be understood to mean the named company or individual, or any company owned or controlled by them including companies owned indirectly or via Trustees, any Director of such a company, Beneficial Owner, Nominee, Agent or Charterer's Guest.

### CLAUSE 22 PAYMENT OF CHARTER FEES AND OTHER MONIES TO THE OWNER

All funds received by the Broker(s) against this Agreement shall be transferred immediately upon receipt to the Stakeholder (if the first Broker is not the Stakeholder) and then held by the Stakeholder in a designated account in the currency of this Agreement. Fifty percent (50%) of the Charter Fee and Delivery and/or Re-Delivery Fees (if applicable) shall be paid to the OWNER by the Stakeholder after deduction of the full commission by Bank Transfer on the date of commencement of the Charter Period or on the first working day thereafter. The Advance Provisioning Allowance (A.P.A.) together with any Delivery or Re-Delivery costs shall also be paid by the Stakeholder, by Bank Transfer, just prior to embarkation although payment may be made somewhat earlier, depending upon the schedule of the yacht and local banking arrangements. Payment of the A.P.A. and Delivery and Re-Delivery costs shall be to the Captain or to the OWNER for onward transmission to the Captain. The balance of the Charter Fee shall be paid to the OWNER on the first working day following completion of the Charter Period.

### CLAUSE 23 COMPLAINTS

The CHARTERER shall give notice of any complaint in the first instance to the Captain on board and note be taken of the time, date and nature of the complaint.

If, however, this complaint cannot be resolved on board the Yacht then the CHARTERER shall give notice to the OWNER or to the Broker on the OWNER's behalf as soon as practicable after the event giving rise to the complaint has taken place and anyway within twenty-four (24) hours of the event or occurrence unless it is impracticable due to failure or non-availability of communications equipment. The complaint may be made verbally in the first instance but shall be confirmed as soon as possible in writing (by fax, telex or mail) specifying the precise nature of the complaint.

### CLAUSE 24 NOTICES

Any notice given or required to be given by either Party to this Agreement shall be communicated in any form of writing and shall be deemed to have been properly given if proved to have been dispatched pre-paid and properly addressed by mail or bona fide courier service or by fax or telex, in the case of the OWNER, to him or to the Broker at their addresses as per this Agreement or, in the case of the CHARTERER, to his address as per this Agreement or, where appropriate, to him on board the Yacht.

REF: AKB/mnb May 1997

PLEASE INITIAL- OWNER: *ERS*    CHARTERER: *JR*

# RICHARD D. HALL, JR., P.A.
A PROFESSIONAL CORPORATION
ATTORNEYS AND COUNSELLORS AT LAW
211 COMMERCE PLACE, SUITE A
GREENSBORO, NORTH CAROLINA 27401

RICHARD D. HALL, JR.
WILLIAM R. TRIVOSKROW

TELEPHONE
(910) 273-8417
FACSIMILE
(910) 373-1698

August 3, 2001

**VIA FACSIMILE**

Tom DeMartine
Tim Nelson,
Brokers for Owner of Vessel
Seven Seas Yacht Charter
Fax: (941) 966-4038

Dear Mr. Nelson:

    As Owner's representative, you are hereby notified by Charterer that the M/Y Lady Kathryn, subject of the attached Charter Agreement, after oral and written notice remains unfit for the use agreed upon and is unseaworthy due to failure of the air conditioning and plumbing systems (the air conditioning throughout the entire boat, with the exception of 4 of the state rooms which have limited air conditioning, has been without air conditioning all week, in fact, the Captain, in a 3-way telephone call told the broker and two of the Charterers' corporate executives that the air conditioning was not working), and the toilets require numerous flushes to function at all), there has been a strong petro-chemical odor all week in the 3 state rooms below deck, the crew has carelessly removed and failed to replace floorboards, causing injury to at least one passenger who stepped through an open floorboard immediately outside his state room door, the crew has refused to perform room service for the guests, the crew has refused to provide fresh linens, the crew has not cleaned the boat all week, the shower in the master state room only has scalding hot water making it unusable, there was to be an agreed upon crewing of the vessel which has been one steward short all week, the crew has refused to wash guests' clothing suggesting instead that the guests take their clothing to a laundromat, the boat was to have been docked in St. Tropez, however the Captain had made no effort to secure dockage and would not do so (the Charterer had to personally arrange for two nights dockage and only then did the Captain dock the boat), a large 8 – 10 person Jacuzzi was advertised, however upon asking about it, the guests were informed that it was empty (upon the guests insisting that it be filled so it could be used, the crew filled it and then announced that the heaters did not work), the stereo system is broken and is not available throughout the vessel as advertised, the Charterers left their young daughter with her nanny and asked the Captain to call them if there was any trouble, their daughter became worried and asked the Captain to call her parents. The Captain said he didn't have their number (when in fact he did) and made no effort to

contact the child's parents leaving the child crying until 3:30 a.m. when the parents returned to the vessel, (it should be noted that on this occasion the Charterers attempted to call the Captain 3 times to send the skiff to pick them up because the boat was anchored some distance away however the Captain did not answer his phone as agreed and the guests had to walk back and hail the vessel), the crew has been insubordinate, and there have been admissions by the Captain that said vessel was, and is, unseaworthy from the moment of delivery to tender of this notice of termination and redelivery. Further, we have been informed by the crew that no provisions have been purchased other than some of the wine requested by Charterer. The Guests have not been provided anything but minor food items (bread, cheese, cereal and milk). As a result, there has been a total breach of said charter agreement.

        Charterer hereby demands repayment of all charter fees paid, including Broker's commissions, and a refund of the provisioning allowances deposited in trust, with an accounting and receipts for any wines purchased, less wines consumed by the Charterer, with Owner within 5 days.

Sincerely,

*[signature]*

Richard D. Hall, Jr.
Attorney for James H. Ridinger,
Charterer

**CIV-DIMITROULEAS**

**04-60228** /TORRES

JS 44
(Rev. 12/96)

## CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
JAMES H. RIDINGER

**DEFENDANTS**
THE MOTOR VESSEL LADY KATHERINE, etc.
in rem; & GLOBAL CRUISING, LTD.,
in personam

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF State of N.C.
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Broward
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
One Biscayne Tower
2 South Biscayne Blvd., Suite 2300
Miami, FL 33131-1803

ATTORNEYS (IF KNOWN)

**(d) CIRCLE COUNTY WHERE ACTION AROSE:** DADE, MONROE, (BROWARD), PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☒ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med Malpractice | B☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | A PROPERTY RIGHTS | B☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | PERSONAL PROPERTY | B☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | B☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | B☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | B☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | A LABOR | B SOCIAL SECURITY | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| A REAL PROPERTY | A CIVIL RIGHTS | PRISONER PETITIONS | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| B☐ 220 Foreclosure | ☐ 442 Employment | HABEAS CORPUS: | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | B☐ 530 General | | FEDERAL TAX SUITS | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | A☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | A☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | B☐ 540 Mandamus & Other | ☐ 791 Empl Ret Inc Security Act | A☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | B☐ 550 Civil Rights | | A OR B | |
| | | B☐ 555 Prison Condition | | | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Arrest of Vessel; Supp. Admiralty Rule C

LENGTH OF TRIAL
via ___ days estimated (for both sides to try entire case)

**VII. REQUESTED IN COMPLAINT:** CHECK IF THIS IS A **CLASS ACTION** ☐ UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE ___ DOCKET NUMBER ___

DATE 2/20/04
SIGNATURE OF ATTORNEY OF RECORD Bar# 0146765

FOR OFFICE USE ONLY
RECEIPT # 530464 AMOUNT 150.00 APPLYING IFP ___ JUDGE ___ MAG. JUDGE ___